JANES, for the use of William B. Vanover, administrator, etc., *vs.* HORTON, *et al.*

1. A party who has contracted with another, to do a particular thing, upon the happening of a certain event, is bound, when that event happens, within his knowledge, to do the thing contracted to be done, without notice or order from the other party—unless such notice or demand be required by the express stipulations, or the peculiar nature of the contract. And where the event to happen is the judgment of a Court in a case in which the person contracting to do the thing was a party, the Court will presume his knowledge of the judgment.

2. In an action, by a sheriff for the use of others, upon an illegality bond, an entry by the sheriff, on the execution arrested by the illegality, that "the property was not delivered by the defendant in execution, on the day on which it was advertised for sale, after judgment, overruling the illegality, is *prima facie* evidence of non-delivery.

Debt, in Terrell Superior Court. Tried before Judge PERKINS, at the May Term, 1860.

This case involves the facts following, to-wit:

A mortgage *fi. fa.*, issued from the Inferior Court of Lee county, in favor of William G. Howard and John Heutz, as administrators of Thomas Howard, deceased, against William Horton, dated the 21st of June, 1845, was on the 28th of June, 1845, levied by William Janes, the sheriff of said county, on the following negro slaves, described in the mortgage *fi. fa.*, to-wit: John, Edmund, Harriet and her boy child, and Dice. The defendant in *fi. fa.*, William Horton, filed an affidavit of illegality to the *fi. fa.*, and the sheriff left the negroes in his possession, upon his giving bond, with Clem. Jarnin, Thomas Y. Berry, Andrew J. Berry, and C. R. Alexander, as his securities, for the forthcoming of the negroes. The following is a copy of the bond:

" GEORGIA—LEE COUNTY :

" Know all men by these presents, that we, William Horton, Clem. Jarnin, Thomas Y. Berry, Andrew J. Berry, and C. R. Alexander, are held, and firmly bound unto William Janes, sheriff of said county, in the sum of three thousand dollars, for the true payment of which, we bind ourselves, our heirs, and legal representatives, jointly and severally, firmly by these presents. Sealed with our seals, and dated this 28th of June, 1845.

"The conditions of the above bond are such, that whereas, certain negroes, to-wit: Dice, Harriet and her child, John, and Edmund, have been levied on by virtue of a mortgage *fi. fa.*, in favor of John Hentz and William G. Howard, administrators of Thomas Howard, deceased, against the said William Horton, and the said Horton has taken an illegality to said *fi. fa.*, in terms of the law.

" Now, if the said Horton, or his securities for him, shall well and truly deliver to said sheriff said property, if said illegality shall be set aside, then this bond to be void, else to remain in full force and virtue."

The bond was duly signed by Horton and his securities, and delivered to the sheriff.

At the August Term, 1845, of Lee Superior Court, the illegality was overruled, and the *fi. fa.* was ordered to proceed.

The sheriff advertised the property for sale on the first Tuesday in November, 1845, and Horton and his securities, failed to deliver the negroes to the sheriff, according to the terms of the bond.

William G. Howard and John Hentz both died, and John B. Vanover was regularly appointed administrator *de bonis non* of Thomas Howard, deceased.

On the 9th of August, 1845, suit was instituted, in Lee Superior Court, in favor of the sheriff, for the use of the administrator, *de bonis non*, against the securities on the bond, to recover damages for the breach thereof, Horton having left the State, carrying with him the negroes.

On the trial of the case, (which was transferred to Terrell county, where the same was formed,) the plaintiff offered in evidence: First, the mortgage *fi. fa.*, on which were severally indorsed, the levy on the slaves mortgaged, an entry of illegality interposed, and then this entry: "The above property being advertised for sale this day, the defendant failed to produce the same, according to his bond, 4th November, 1845, William Janes, sheriff." Secondly, an extract from the minutes of Lee Inferior Court, August Term, 1845, showing that the illegality taken to said *fi. fa.* was overruled, and said *fi. fa.* ordered to proceed. Thirdly, the bond declared on, which was objected to by counsel for defendant, on the ground "that the same was not a statutory bond, and that the plaintiff must show affirmatively, a demand on the defendants for the property, and their refusal to deliver it, before the action could be maintained, and that as there was no averment in the plaintiff's declaration that a demand was made before suit brought, the bond could not go to the jury, unless such averment was made by way of amendment."

The presiding Judge admitted the bond, but ruled that the plaintiff must aver and prove a demand of the property, and a failure or refusal to deliver it, before he could recover, to which the plaintiff excepted.

The plaintiff then offered the depositions of William Janes, to prove that the negroes were never delivered according to the obligation of the bond, which testimony, (upon objection made,) the presiding Judge repelled, on the ground that he was one of the plaintiffs, and was interested in the event of the suit, and was therefore an incompetent witness. To which decision plaintiff excepted.

Plaintiff then closed, and, on motion of counsel for defendant, the Court awarded a non-suit against the plaintiff.

These several rulings and decisions of the Court are complained of as errors, and the plaintiff, by his writ, seeks to reverse the judgment because of such errors.

IRVIN & BUTLER, STROZIER & HOOD, for plaintiff in error.

W. A. HAWKINS, and WARREN & WARREN, for defendant in error.

*By the Court*—JENKINS, J., delivering the opinion.

The record in this case presents two exceptions, one of which was taken to the rejection of the depositions of William Janes, sheriff, who is the nominal plaintiff, and whose testimony was offered to prove that the principal obligor did not deliver the negroes in compliance with his bond.

This evidence was rejected, on the ground that the witness was interested in the event of the suit, and therefore incompetent. To the extent of liability for costs, the sheriff was apparently interested, and it does not appear that his usees, for whose benefit the suit was instituted, deposited the costs with the Clerk, or did any other act to relieve him from such liability; but in our view of this case, (as will hereafter appear,) his depositions were not at all material to the case.

This evidence having been rejected, the plaintiff closed his case, and upon defendant's motion, the Court below awarded a non-suit, to which plaintiff's counsel excepted ; and this ruling of the Court we have now to review. It is not distinctly stated on what grounds this non-suit was awarded ;

Janes *vs.* Horton *et al.*

but from other parts of the record, we arrive at the conclusion that they were these:

1st. That the bond was not a statutory, but a voluntary bond.

2d. That plaintiff had failed to prove a demand for the slaves levied upon, which was incumbent upon him by the common law.

3d. That he failed to prove that the defendant did not deliver the slaves in terms of the law.

It is by no means clear that this bond so nearly conforms to the statute as to make it a statutory bond. For the purposes of this case, adopting the defendant's hypothesis, we treat it as a voluntary bond.

1. Then, by the rules of the common law, was it necessary that the plaintiff should have made, and should prove, a demand upon the obligor for the slaves, when, or after, the contingency had occurred which entitled the obligee to the delivery of them? We think not.

Mr. Parsons, in his valuable treatise on contracts, thus declares the well established rule on this subject:

"If the thing is to be done, on the happening of an event, not to be caused by either party, he who is to have the benefit of the thing, should give notice to him who is to do it, that the event has occurred, *unless from its own nature it must become known to that party when it happens;* or perhaps unless it is as likely to be known to the party who is to do the act required by the contract, as to him for whose benefit it is to be done. The rule in respect to *demand* rests upon the same principle as that in respect to *notice.* It may be requisite, either from the stipulations, or of the parties, or from the peculiar nature of the contract; but where not so requisite, he who has promised to do anything, must perform his promise in the prescribed time, and the prescribed way; or if none be prescribed, in a reasonable time, and a reasonable way, *without being called upon.*" 2 Parsons on Contracts, 184.

The event, upon the happening of which, the obligor in this case had contracted to deliver the slaves, was a certain

judgment, thereafter to· be rendered in a cause to which the obligor was a party.

The evidence shows that that judgment was rendered, and that it made necessary the delivery of the slaves to the plaintiff. The obligor being the promovant in that litigation, the law presumes that the judgment, when rendered, was known to him. He was *more* likely to know it than the obligee, who had no interest in the litigation—was no party to it. Neither the stipulations of the contract nor its peculiar nature made a demand requisite. It was therefore incumbent on the obligor to perform his contract, (i. e., to deliver the slaves,) within a reasonable time, " *without being called upon.*" A reasonable time would have been on or before the day on which the sheriff, in pursuance of the judgment upon the illegality, had advertised the property for sale, and this advertisement he was bound to notice.

2. But it is said the plaintiff failed to prove that the defendant did not so deliver the slaves. We hold—

That the entry on the *fi. fa.*, dated 4th November, 1845, which was in evidence, is competent and sufficient proof *prima facie* of this fact. It was an *official* entry, which it was the duty of the officer to make at that time; it speaks only to that which his duty required; he had competent knowledge of the fact; there was no conceivable motive to make that entry falsely, more than any other; it was part of the *res gestæ* of his official actings and doings in a matter confided to him by law; his general interest in making the entry, to show that he has done his duty, does not affect the admissibility of the evidence, nor impair its effect. 1 *Greenleaf on Evidence*, sec. 115, *and notes, citing numerous authorities.* Why should not the sheriff's entry prove this fact as well as the levy, which was a part of plaintiff's case? We think there was error in the judgment awarding a nonsuit.

Judgment reversed.